IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH A. REECE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action No. 2:11-CV-00008 |
| v. | ) | Judge Wiseman / Knowles |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 18. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20. Plaintiff has filed a Reply. Docket No. 23. Defendant has filed a Sur-Reply. Docket No. 26.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on March 21, 2007, alleging that she had been disabled since January 15, 2005, due to back problems, seizures, and panic attacks.[1] Docket No. 14, Attachment ("TR"), TR 10, 55-56, 104-06, 107-13, 116-18. Plaintiff's applications were denied both initially (TR 47, 48) and upon reconsideration (TR 50, 49). Plaintiff subsequently requested (TR 67-69) and received (TR 22-46) a hearing.  Plaintiff's hearing was conducted on July 21, 2009, by Administrative Law Judge ("ALJ") K. Dickson Grissom.  TR 22-46.  Plaintiff and vocational expert ("VE"), Rebecca Williams appeared and testified.  *Id.*  At the hearing, Plaintiff's representative moved to amend the disability onset date from January 15, 2005 to January 27, 2006, which the ALJ granted. TR 28.

On September 29, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 21.  Specifically, the ALJ made the following findings of fact:

>  1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

---

[1] Although Plaintiff's documents note alleged disability due to seizures, Plaintiff, in her hearing, testified as follows:
> Q  In your application you said .... I get nervous around a lot of people, and then I have a panic attack, and this leads to seizures, remember writing that?
> A  I never wrote that.  He read that to me.  I don't know where that came from but I --
> Q  Did you tell anyone at the Social Security Administration that that was one - -
> A  No, sir, absolutely not.
> Q  So you're telling me today that you do not have seizures?
> A  I've never had a seizure.

TR 30.

2. The claimant has not engaged in substantial gainful activity since January 27, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following combination of severe impairments: bulging discs in the lumbar spine, hypertension, irritable bowel syndrome, depression, bi-polar disorder, and panic attacks (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the [*sic*] she cannot work around hazards such as dangerous and moving machinery; she cannot work at unprotected heights; she is limited to doing work involving simple, repetitive, and non-detailed tasks; she must have no more than casual and infrequent contact with coworkers and the public; she must have direct and non-confrontational supervision; and changes in her workplace must be infrequent and casually introduced.

6. The claimant is capable of performing past relevant work as a bundle tier and an upholsterer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 27, 2007 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 12-21.

On October 5, 2009, Plaintiff timely filed a request for review of the hearing decision.

TR 6. On November 17, 2010, the Appeals Council issued a letter declining to review the case

(TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in 1) failing to give "good reasons" for the weight assigned to the opinion of Plaintiff's treating physician; and 2) failing to recognize that she suffers from an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. Docket No. 19. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be remanded with instruction for an award of benefits, or in the alternative, for a new hearing with direction to the Administrative Law Judge to reconsider the issues. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

7

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Weight Accorded to the Opinion of Plaintiff's Treating Physician**

Plaintiff maintains that the ALJ failed to articulate "good reasons" for "rejecting" the opinion of Dr. P.K. Jain, Plaintiff's treating physician. Docket No. 19. Plaintiff specifically argues the ALJ erred in not according Dr. Jain's opinion controlling weight because the consultative examiner upon whose opinion the ALJ relied did not have access to all of the pertinent medical records, including Dr. Jain's assessment and a 2008 MRI. *Id.* Plaintiff contends that the ALJ should have accorded Dr. Jain's opinion controlling weight because there was no contrary opinion rendered from any medical sources with access to all the pertinent evidence. *Id.* Plaintiff also argues that the ALJ did not provide an "adequate rationale" in his decision not to give the treating physician's opinion controlling weight. *Id.*

Defendant responds that the ALJ properly discounted Dr. Jain's opinion because: (1) the record references Dr. Jain on only three occasions, thereby failing to establish that Dr. Jain had the extensive treatment relationship justifying the application of the treating physician rule; (2) "the record appears to be completely devoid of any treatment notes from Dr. Jain"; and

8

(3) Dr. Jain's opinion contradicted the opinions of the state agency consulting physicians and the consultative examiner, the evidence of record, and Plaintiff's own reported daily activities. Docket No. 20. With regard to Plaintiff's argument that the opinions of the state agency physicians should not be accorded weight since they did not consider post 2007 evidence, Defendant maintains that the state agency physicians each considered Plaintiff's 2005 MRI, and essentially argues that, because Plaintiff's 2008 MRI did not contain "notably different results from the 2005 MRI," the opinions of the state agency physicians are valid. *Id.* Defendant further argues that the fact that Plaintiff's 2008 MRI results were not "notably different" from her 2005 MRI results demonstrates that her condition is "relatively stable." *Id.* Defendant contends that the "subsequent evidence does not reliably document a significant decrease in Plaintiff's ability to function, and should not, therefore, discredit the 2007 opinions." *Id.*

Plaintiff, in her Reply, reiterates her arguments that the ALJ did not adequately explain his reasoning for discounting Dr. Jain's opinion, and that remand is warranted because the ALJ failed to follow the legal standard requiring such an explanation. Docket No. 23. Plaintiff argues that the ALJ should have re-contacted Dr. Jain if he felt that the record lacked sufficient information to afford his opinion controlling weight or if the evidence was inadequate to reach a determination of disability. *Id.* Plaintiff also argues that it is improper for Defendant to raise the assertion that Dr. Jain was not sufficiently Plaintiff's treating physician to warrant treating physician deference when the ALJ accepted Dr. Jain as Plaintiff's treating physician. *Id.*

Defendant, in its Sur-Reply, reiterates that the ALJ properly explained his reasoning for discounting Dr. Jain's opinion and properly used contradictory evidence to reject Dr. Jain's opinion. Docket No. 26. Defendant also iterates that the ALJ was under no obligation to re-

9

contact Dr. Jain because there was sufficient evidence in the record to render a disability determination. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

> (5) Specialization. We generally give more weight to the
> opinion of a specialist about medical issues related to his or her area
> of specialty than to the opinion of a source who is not a specialist.
> . . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

The ALJ in the case at bar accepted Dr. Jain as Plaintiff's treating physician.[3] TR 16. The Regulations thus permit the ALJ to accord controlling weight to Dr. Jain's opinion, as long as that opinion is consistent with, and supported by the evidence of record. *See* 20 C.F.R. § 416.927(d).

In March 2009, Dr. Jain completed a Medical Source Statement regarding Plaintiff's claim for disability in which he opined that Plaintiff could work for less than 1 hour per day; could stand and sit for 2 hours in a workday, but only 15 minutes at one time; could occasionally and frequently lift 5 pounds; could occasionally bend, stoop, balance, and perform fine manipulations with her right hand. TR 16 (*citing* TR 599-601). Dr. Jain also opined that Plaintiff could frequently perform fine manipulations with her left hand and gross manipulations

---

[3] While the ALJ accepted Dr. Jain as Plaintiff's treating physician, it is noted that only one document in the record contains any medical notes regarding the Plaintiff from Dr. Jain. TR 599-601.

11

with both hands, and could frequently raise her arms over her shoulder level. TR 600. Dr. Jain further opined that Plaintiff could occasionally work around dangerous equipment, operate a motor vehicle, tolerate heat and cold; and could frequently tolerate exposure to dust, smoke, or fumes, and noise. *Id.* He further noted that Plaintiff's pain was severe, and that Plaintiff would need to elevate her legs occassionally during an 8-hour workday. *Id.* Additionally, Dr. Jain opined that the Plaintiff would be expected to miss work 4 or more days per month. TR 601. As support for his findings, Dr. Jain noted Plaintiff's positive straight leg test, which was positive on both legs above 45°. *Id.*

Despite the ALJ's consideration of Dr. Jain as Plaintiff's treating physician, the ALJ in the case at bar found that Dr. Jain's determinations regarding Plaintiff's ability to do work-related activities were inconsistent with, and unsupported by, the overall evidence of record. TR 19. The ALJ explained, "Dr. Jain's opinion is given little weight because it essentially says that the claimant is more limited than is supported by the overall evidence of record." *Id*. Specifically, the ALJ noted inconsistencies between the consultative examiner's opinion and Dr. Jain's opinion regarding Plaintiff's degree of limitation, as well as inconsistencies in Plaintiff's testimony of her daily activities and her degree of pain and limitation. TR 18-19. When demonstrating these inconsistencies, the ALJ discussed in detail the 2007 examination findings and objective diagnostic testing results of consultative examiner Dr. Jerry Surber. TR 14, 16 *(citing* TR 369-72, 599-601). The ALJ noted that Dr. Surber found that Plaintiff had no limitations regarding the functional mobility of her back, did not exhibit a type of limping or antalgic gait, nor did she use an assistive device. TR 16 (*citing* TR 372). Additionally, the ALJ continued:

12

> The claimant accomplished a sitting and supine straight leg raise test but complained of pain in her left greater than right lower back. The claimant was able to do a right and left one-leg stand with no evident difficulties or limitations. The claimant was able to do the straightaway tandem and heel-toe walks with no evident difficulties or limitations.

TR 16 (*citing* TR 371).

The ALJ also detailed the findings from both Plaintiff's 2005 and 2008 MRIs, as well as her 2006 CT scans of the cervical spine and brain:

> A January 2005 MRI of the lumbar spine revealed left paracentral disc protrusion at L3-L4, L4-L5, and L5-S1. A December 2006 CT scan of the cervical spine was normal. A December 2006 CT scan of the brain was negative. A March 2008 MRI of the lumbar spine revealed a disc bulge osteophytes complex and superimposed left foraminal disc protrusion at L3-L4, an annular disc tear, mild left foraminal stenosis with contact of the exiting left L3 nerve root, mild bilateral L4-L5 foraminal stenosis with contact of the existing L4 nerve roots, and a disc bulge ostephytes complex and superimposed left foraminal disc protrusion at L5-S1, a disc bulge ostephytes complex and superimposed left foraminal disc protrusion with mild left foraminal narrowing and mild contact of the existing left L5 nerve root, and a suspected annular disc tear at L5-S1.

TR 16 (*citing* TR 349, 542).[4]

In view of the contradicting medical evidence, the ALJ also looked to other evidence in the record, specifically Plaintiff's testimony. *See* TR 14-19. The ALJ noted that Plaintiff testified, *inter alia*, that she still cooked, shopped, cared for her grandchildren, and cleaned her house. TR 14, 18. The ALJ determined this testimony presented inconsistencies that detracted

---

[4] Although Plaintiff argues that Dr. Jain's ability to consider the 2008 MRI findings should afford his opinion greater weight, Dr. Jain never referenced the 2008 MRI in his statement, and the ALJ accordingly did not determine that the 2008 MRI necessitated a finding of a greater limitation for the Plaintiff. TR 16, 599-601.

13

from Plaintiff's credibility, particularly regarding the intensity, persistence, and limiting effects of her symptoms. TR 18. Specifically the ALJ observed:

> The claimant alleges that she can lift 5 pounds maximum, yet she reported that she does housecleaning work daily and that she often tends her grandchildren. Presumably, these activities would require the frequent lifting of more than 5 pounds. She reported that with her pain medication she experiences pain at a level of 7 on a scale of 1 to 10 (10 being the highest) on a daily basis, yet she did not take any pain medication on the day of the hearing and appeared to tolerate the hearing fairly well. Presumably, the claimant's pain level should have been higher than a 7 at the hearing which would have required extreme endurance. She had to stand one time during the hearing. . . . The claimant alleged that she spends most of her day in her recliner with her feet propped up, yet somehow she is able to engage in several common activities of daily living, including cooking, cleaning, shopping, and tending her grandchildren."

TR 18-19.

The ALJ determined that this evidence contradicted Plaintiff's allegations of back pain, at least in regard to the severity and resulting limitations. TR 19.

When finding that Dr. Surber's opinion was more consistent with the overall evidence of record, the ALJ noted:

> The State agency consultants adequately considered the combined effect of the claimant's impairments. The consultive examiner's opinion is given great weight because it essentially concludes that the claimant's lumbar back pain does not cause her to experience a severe reduction in her functional mobility.

*Id.*

Dr. Jain was accepted as Plaintiff's treating physician, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions, as long as his opinion was consistent with, and supported by, the evidence of record. As has been demonstrated, however, Dr. Jain's

14

opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighted against the contradictory evidence under the criteria listed above, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *Id.*; 20 C.F.R. § 416.927(e)(2).

Because Dr. Jain's opinion was inconsistent with, and unsupported by, the evidence of record, the Regulations do not mandate that the ALJ accord Dr. Jain's evaluation controlling weight. Moreover, as has been demonstrated, the ALJ clearly articulated his reasons for discounting Dr. Jain's opinion; the Regulations do not require more. Plaintiff's argument fails.

## 2. Meeting or Equaling a Listing

Plaintiff argues that she suffers from an impairment or a combination of impairments that meets or medically equals the listed impairment for disorders of the spine, 20 C.F.R., Part 404 Subpart P, Appendix 1, Listing 1.04(A), and that the ALJ adopted an unfavorable finding at step three in the sequential evaluation process without consideration of whether she satisfied the requisites of Listing 1.04. Docket No. 19. Plaintiff also asserts that the ALJ should have obtained testimony from a medical advisor for his evaluation. *Id.* Plaintiff contends that such an evaluation would "direct[] a finding of disability in this context." *Id.*

Defendant responds that the ALJ thoroughly evaluated all of Plaintiff's impairments regarding the relevant medical listings and properly concluded, based on substantial evidence, that Plaintiff's impairments did not meet or medically equal a listing. Docket No. 20. Defendant

maintains that the ALJ properly determined that Plaintiff did not meet or equal Listing 1.04A because a listing is met or equaled only when *all* of the listing's criteria are established via the medical evidence. *Id.* Defendant specifically contends that Plaintiff did not present evidence showing the requisite limitation of the motion of the spine and sensory or reflex loss. *Id.* Defendant further argues that, even if Plaintiff presented enough evidence to meet each criterion, she failed to prove that she met all of the Listing criteria for a continuous twelve month period. *Id.*

With regard to Listings 1.00, "Musculoskeletal system," and 1.04, "Disorders of the Spine," the Code of Federal Regulations states:

> [1.00B2]b. *What we mean by inability to ambulate effectively*
> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.
>
> . . .

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> . . .
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R., Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b) and 1.04(A).

Plaintiff incorrectly asserts that the ALJ made his disability determination without consideration of whether Plaintiff's impairments met or equaled the requisites of Listing 1.04. The ALJ specifically stated, "With respect to the claimant's alleged physical impairments, the claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity." TR 13. Additionally, the ALJ's subsequent in-depth discussion of Plaintiff's physical impairments in his decision (discussed above), illustrates that the ALJ considered all available evidence, including both MRIs, and determined that Plaintiff's physical impairments were not of listing level severity.

Additionally, Plaintiff has failed to adduce evidence that her back pain resulted in an inability to ambulate effectively. As discussed by the ALJ, Dr. Surber noted that Plaintiff had no limitations regarding the functional mobility of her back, did not exhibit any type of limping or antalgic gait, and did not use any type of assistive device. TR 16 (*citing* TR 372). Notably, even Dr. Jain did not mention any inability to ambulate effectively. TR 599-601. His notes indicate a "difficulty" in moving during sitting to lying and lying to sitting and standing. TR 601. A mere

"difficulty," however, is not enough to satisfy the requisites of Listing 1.04.

The ALJ also discussed other evidence of record that fails to demonstrate limitations in Plaintiff's ability to ambulate. As discussed above, Plaintiff reported that she lived alone, cooked, shopped, cared for her grandchildren, and cleaned her house. TR 18. Plaintiff's level of unassisted activity does not support that she is unable to ambulate effectively. Moreover, there is no evidence of record demonstrating that Plaintiff has such insufficient lower extremity functioning that she requires or uses a hand-held assistive device that limits the functioning of both upper extremities in order to carry out her everyday activities, nor does it indicate that her impairment "interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R., Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b)(1).

An ALJ has the duty to review all of the medical and testimonial evidence relevant to a claim. 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). If the ALJ finds inconsistencies in the record, he will weigh all of the evidence to determine whether, based upon that evidence, disability within the meaning of the Act and Regulations exists. 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2). After reviewing the medical and testimonial evidence in its entirety, the ALJ concluded that Plaintiff failed to demonstrate the criteria for Listing 1.04A. TR 13. This determination was proper.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ's decision was

properly supported by "substantial evidence;" the ALJ's decision, therefore, must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge